**SUMMONS - CIVIL**
JD-CV-1 Rev. 2-22
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

**For information on ADA accommodations, contact a court clerk or go to: *www.jud.ct.gov/ADA.***

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

**Instructions are on page 2.**

- [ ] Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.
- [X] Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.
- [ ] Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk *(Number, street, town and zip code)* | Telephone number of clerk | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 123 Hoyt Street, Stamford 06905 | (203) 965 – 5308 | 6/11/2024 |
| [X] Judicial District [ ] Housing Session [ ] G.A. Number: ___ | At *(City/Town)* Stamford-Norwwalk at Stamford | Case type code *(See list on page 2)* Major: M Minor: 90 |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(if attorney or law firm)* |
|---|---|
| The McMinn Employment Law Firm, LLC, 100 Lafayette Blvd, Suite 1100, Bridgeport, CT 06604 | 443244 |
| Telephone number: (203) 683 – 6007 | Signature of plaintiff *(if self-represented)* |

The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. [X] Yes [ ] No

E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book *(if agreed)*: michael@mcminnemploymentlaw.com

| Parties | Name *(Last, First, Middle Initial)* and address of each party *(Number; street; P.O. Box; town; state; zip; country, if not USA)* | |
|---|---|---|
| First plaintiff | Name: John D. Crowell<br>Address: 91 Strawberry Hill Avenue. Apartment 633, Stamford Connecticut 06902 | P-01 |
| Additional plaintiff | Name:<br>Address: | P-02 |
| First defendant | Name: Alan Gray Risk Management, Inc. a/k/a A.G. Risk Management, Inc., 1880 JFK Blvd, Ste 801, Philadelphia, PA, 19103<br>Address: Agent for Service: Corporation Service Company, 100 Pearl St, 17th Fl, Hartford, CT, 06103 | D-01 |
| Additional defendant | Name:<br>Address: | D-02 |
| Additional defendant | Name:<br>Address: | D-03 |
| Additional defendant | Name:<br>Address: | D-04 |

| Total number of plaintiffs: 1 | Total number of defendants: 1 | [ ] Form JD-CV-2 attached for additional parties |
|---|---|---|

## Notice to each defendant

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.

| Date | Signed *(Sign and select proper box)* | | Name of person signing |
|---|---|---|---|
| 4/25/2024 | [signature] | [X] Commissioner of Superior Court [ ] Clerk | Michael C. McMinn |

If this summons is signed by a Clerk:
a. The signing has been done so that the plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law.
c. The court staff is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint.

A TRUE COPY ATTEST:
CHARLES J. LILLEY
STATE MARSHAL/INDIFFERENT PERSON
HARTFORD COUNTY

*For Court Use Only*
File Date

| I certify I have read and understand the above: | Signed *(Self-represented plaintiff)* | Date | Docket Number |
|---|---|---|---|
| | | | |

Print Form



Reset Form

**Instructions**

1. *Type or print legibly. If you are a self-represented party, this summons must be signed by a clerk of the court.*
2. *If there is more than one defendant, make a copy of the summons for each additional defendant. Each defendant must receive a copy of this summons. Each copy of the summons must show who signed the summons and when it was signed. If there are more than two plaintiffs or more than four defendants, complete the Civil Summons Continuation of Parties (form JD-CV-2) and attach it to the original and all copies of the summons.*
3. *Attach the summons to the complaint, and attach a copy of the summons to each copy of the complaint. Include a copy of the Civil Summons Continuation of Parties form, if applicable.*
4. *After service has been made by a proper officer, file the original papers and the officer's return of service with the clerk of the court.*
5. *Use this summons for the case type codes shown below.*

   *Do not use this summons for the following actions:*
   - *(a) Family matters (for example divorce, child support, custody, parentage, and visitation matters)*
   - *(b) Any actions or proceedings in which an attachment, garnishment or replevy is sought*
   - *(c) Applications for change of name*
   - *(d) Probate appeals*
   - *(e) Administrative appeals*
   - *(f) Proceedings pertaining to arbitration*
   - *(g) Summary Process (Eviction) actions*
   - *(h) Entry and Detainer proceedings*
   - *(i) Housing Code Enforcement actions*

**Case Type Codes**

| MAJOR DESCRIPTION | CODE Major/ Minor | MINOR DESCRIPTION |
|---|---|---|
| Contracts | C 00 | Construction - All other |
| | C 10 | Construction - State and Local |
| | C 20 | Insurance Policy |
| | C 30 | Specific Performance |
| | C 40 | Collections |
| | C 50 | Uninsured/Underinsured Motorist Coverage |
| | C 60 | Uniform Limited Liability Company Act – C.G.S. 34-243 |
| | C 90 | All other |
| Eminent Domain | E 00 | State Highway Condemnation |
| | E 10 | Redevelopment Condemnation |
| | E 20 | Other State or Municipal Agencies |
| | E 30 | Public Utilities & Gas Transmission Companies |
| | E 90 | All other |
| Housing | H 10 | Housing - Return of Security Deposit |
| | H 12 | Housing - Rent and/or Damages |
| | H 40 | Housing - Housing - Audita Querela/Injunction |
| | H 50 | Housing - Administrative Appeal |
| | H 60 | Housing - Municipal Enforcement |
| | H 90 | Housing - All Other |
| Miscellaneous | M 00 | Injunction |
| | M 10 | Receivership |
| | M 15 | Receivership for Abandoned/Blighted Property |
| | M 20 | Mandamus |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) |
| | M 40 | Arbitration |
| | M 50 | Declaratory Judgment |
| | M 63 | Bar Discipline |
| | M 66 | Department of Labor Unemployment Compensation Enforcement |
| | M 68 | Bar Discipline - Inactive Status |
| | M 70 | Municipal Ordinance and Regulation Enforcement |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S. 50a-30 |
| | M 83 | Small Claims Transfer to Regular Docket |
| | M 84 | Foreign Protective Order |
| | M 89 | CHRO Action in the Public Interest - P.A. 19-93 |
| | M 90 | All other |

| MAJOR DESCRIPTION | CODE Major/ Minor | MINOR DESCRIPTION |
|---|---|---|
| Property | P 00 | Foreclosure |
| | P 10 | Partition |
| | P 20 | Quiet Title/Discharge of Mortgage or Lien |
| | P 30 | Asset Forfeiture |
| | P 90 | All other |
| Torts (Other than Vehicular) | T 02 | Defective Premises - Private - Snow or Ice |
| | T 03 | Defective Premises - Private - Other |
| | T 11 | Defective Premises - Public - Snow or Ice |
| | T 12 | Defective Premises - Public - Other |
| | T 20 | Products Liability - Other than Vehicular |
| | T 28 | Malpractice - Medical |
| | T 29 | Malpractice - Legal |
| | T 30 | Malpractice - All other |
| | T 40 | Assault and Battery |
| | T 50 | Defamation |
| | T 61 | Animals - Dog |
| | T 69 | Animals - Other |
| | T 70 | False Arrest |
| | T 71 | Fire Damage |
| | T 90 | All other |
| Vehicular Torts | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs. Driver(s) |
| | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | V 05 | Motor Vehicles* - Property Damage only |
| | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | V 09 | Motor Vehicle* - All other |
| | V 10 | Boats |
| | V 20 | Airplanes |
| | V 30 | Railroads |
| | V 40 | Snowmobiles |
| | V 90 | All other<br>*Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| Wills, Estates and Trusts | W 10 | Construction of Wills and Trusts |
| | W 90 | All other |

Print Form



Reset Form

THE MCMINN EMPLOYMENT LAW FIRM, LLC

**RETURN DATE: JUNE 11, 2024**

| | | |
|---|---|---|
| JOHN D. CROWELL, | : | SUPERIOR COURT |
| Plaintiff, | : | J.D. OF STAMFORD-NORWALK AT STAMFORD |
| v. | : | |
| ALAN GRAY RISK MANAGEMENT, INC., a/k/a A.G. RISK MANAGEMENT, INC., | : | |
| Defendant. | : | APRIL 25, 2024 |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, *et seq*., and Connecticut common law.

2. Plaintiff filed his claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO") in Case No. 2320008 and received a Release of Jurisdiction on January 30, 2024.

**PLAINTIFF**

3. Plaintiff John D. Crowell ("Plaintiff" or "Crowell") is a natural person and resident of the City of Stamford and State of Connecticut.

**DEFENDANT**

4. Defendant Alan Gray Risk Management, Inc., also known as A.G. Risk Management, Inc., ("Defendant" or "AG"), is a Pennsylvania corporation, that operates in Pennsylvania, Connecticut, New York, and Massachusetts, and employs remote employees, including Plaintiff, who worked from his home in Stamford, Connecticut.

5. Defendant employs more than one (1) employee.

## FACTUAL ALLEGATIONS

6. Crowell was born in 1957 and is currently 66 years old.

7. Crowell was hired by Armour Risk Management Incorporated ("Armour") and began working on November 18, 2019.

8. Crowell was hired by Armour Head of Claims J. Marcus Doran ("Doran.")

9. Crowell was employed as a Senior Assumed Reinsurance Specialist.

10. Crowell was qualified for the position of a Senior Assumed Reinsurance Specialist.

11. Crowell's position was a remote position that required travel.

12. Crowell was supervised by Reinsurance Manager Besty Mitchell ("Mitchell.")

13. Crowell initially trained in Armour's Quincy, MA office.

14. During Crowell's first month at Armour, Crowell was seated in a cubicle next to Mitchell.

15. Crowell heard Mitchell say, "I don't know why I was forced to hire this old man."

16. Crowell was the only new hire at the time of Mitchell's comment.

17. Crowell was shocked by Mitchell's statement and looked up at her in surprise.

18. Crowell observed Mitchell looking directly at him.

19. Mitchell staring at Crowell while she questioned why she was "forced" to hire an "old man" left Crowell with the unmistakable belief that she was referencing him.

20. Mitchell did her best to make Crowell feel unwelcome.

21. In January 2020, Crowell began working remotely on a full-time basis from his home in Stamford, CT.



THE MCMINN EMPLOYMENT LAW FIRM, LLC

THE MCMINN EMPLOYMENT LAW FIRM, LLC

22. Alan Gray, LLC acquired Armour in 2021 and rebranded Armour as Alan Gray Risk Management, Inc. a/k/a A.G. Risk Management, Inc.

23. Throughout the course of his employment, Mitchell routinely treated Crowell less favorably than younger employees.

24. As part of his duties, Crowell was required to attend a settlement conference with a client in Branford, CT.

25. Crowell was required to travel approximately 46 miles to and from the settlement conference.

26. Crowell attended the settlement conference and then traveled with his client after the conference to discuss the negotiations prior to returning home.

27. Crowell submitted a request for mileage reimbursement to Mitchell.

28. Mitchell denied Crowell's request for reimbursement.

29. Mitchell's stated reason for denying Crowell's request for reimbursement was because the MapQuest mileage estimate differed from Crowell's report of distance travelled by three miles.

30. Mitchell did not micromanage the mileage reimbursement requests of younger employees.

31. Mitchell asked Crowell to work on a project over the weekend.

32. Crowell complied and worked for eleven consecutive days as a result of Mitchell's request.

33. Crowell requested to use paid time off on the twelfth day, a Friday, due to his fatigue from working for eleven days straight.

34. Mitchell denied Crowell's request for paid time off.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

35. Mitchell did not deny younger employees paid time off after working for eleven consecutive days.

36. Mitchell then removed two days from Crowell's time-off bank for days that Crowell worked and had not requested to take off.

37. Crowell questioned Mitchell about why the days were removed and provided proof that he had worked on the days that were removed from his bank.

38. Crowell was told that AG's human resources person left the company during the company's acquisition and that nothing could be done to reinstate Crowell's available paid time off.

39. Several months later, Crowell's paid time off was finally reinstated.

40. Mitchell did not remove unasked-for and not-taken paid time off from younger employees.

41. Crowell did his best to comply with Mitchell's directions and sought clarification about formats Mitchell wanted to be used for certain documents.

42. When Crowell asked Mitchell which format she wanted him to use, Mitchell merely stated that she did not want to tell him how to do his job and did not provide an answer.

43. Mitchell then found fault with the formats Crowell chose to use.

44. Mitchell falsely criticized Crowell for failing to draft a reserve increase for a file.

45. Crowell had completed the draft of the reserve increase and sent it to Mitchell electronically.

46. Mitchell ignored the drafted reserve increase that Crowell had provided to her.

47. Mitchell did not ignore the work sent to her by younger employees.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

48. During Crowell's employment, Mitchell never performed an annual review for Crowell, as required by AG policy.

49. In December 2021 or January 2022, AG hired Lyubov "Lori" Odessa ("Odessa") as a Reinsurance Claims Manager.

50. Lyubov is currently 50 years old.

51. Odessa and Mitchell held the same job title.

52. After Odessa was hired, Crowell assisted Odessa in learning the computer system that AG used to track claims and maintained a respectful working relationship with Odessa.

53. Crowell learned that Odessa was familiar with specific claims or invoices for AG clients because she had worked with those clients prior to joining AG and drafted several of the claims or invoices that were submitted to AG.

54. Because Odessa drafted those bills, she had additional information about her previous clients.

55. Odessa wanted Crowell to use her information from her previous employer, which Crowell understood to be a conflict of interest.

56. Odessa asked Crowell to act in an unethical manner by using information she had gained in a previous role against the company that Crowell was asked to review, despite having no evidence of fraud.

57. Crowell asked Odessa whether he had a right to ask the questions Odessa wanted him to ask or if the information was gained due to a conflict of interest.

58. Odessa told Crowell that she did not care.

59. In February 2022, Odessa asked Crowell to make a recommendation about whether a billing for an ceded claim was subject to an offset.

60. Prior to this request, Crowell worked exclusively on assumed claims.

61. Ceded claims used a different process and analysis than assumed claims.

62. Crowell determined that it was payable and made a recommendation to subject the billing to offset.

63. On February 18, 2022, Odessa asked Crowell to prepare a large loss report ("LLR") to support his recommendation.

64. Because Odessa was still new to AG, Crowell believed that he was assisting her in understanding company procedures.

65. Crowell prepared a report and submitted it to Odessa for changes.

66. Odessa immediately responded with changes.

67. Crowell had not previously prepared an LLR for Odessa and asked Odessa if she had an example for one that she had done in the past so that he could conform to her specific preferences.

68. Odessa did not provide Crowell with an example LLR.

69. Odessa told Crowell that what she was looking for was basically the same information he would review and analyze when making a recommendation regarding a large assumed billing.

70. Crowell made Odessa's changes and resubmitted the LRR.

71. During the last week of February, Reinsurance Manager Russell Bogin ("Bogin") met with Crowell to discuss his performance for the year.



THE MCMINN EMPLOYMENT LAW FIRM, LLC

THE MCMINN EMPLOYMENT LAW FIRM, LLC

72. Bogin advised Crowell that he would receive a performance bonus based on his achieving 95% of his goals and commended Crowell for his work.

73. Bogin also told attendees at a weekly call-in conference call for his department group recommending that other Reinsurance Specialists reach out to Crowell if they needed assistance, as Crowell knew "his way around a claim file.

74. Crowell replied to the group email, offering any assistance that he could.

75. On Friday, February 24, 2022, Odessa asked Crowell to prepare a draft query email regarding the report and to send it to her for review.

76. Crowell had never been asked in the past to have an AG employee review an email prior to Crowell sending it.

77. Crowell complied, and Odessa sent him proposed minor stylistic changes or changes to word choice.

78. Odessa did not tell Crowell that she wanted to review the minor changes prior to Crowell sending the email.

79. That morning, Crowell sent the revised email back to Odessa as a courtesy and did not receive any notes or changes for the remainder of the day.

80. On Monday, February 28, 2022, Crowell did not receive any notes or changes from Odessa regarding the email.

81. On the evening of February 28, 2022, Crowell sent the email.

82. On March 1, 2022, AG issued performance bonuses to its employees.

83. Crowell received an email from Bogin confirming the bonus.

84. Bogin's email was copied to Crowell's supervisor, Mitchell.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

85. Shortly after receiving Bogin's email, Crowell learned that Mitchell would no longer be approving his requests for time off.

86. As Odessa was copied on the email, Crowell assumed that Odessa would be his supervisor going forward.

87. During the following two weeks, Crowell and Odessa had limited interaction.

88. At no point during her employment did Odessa ever ask Crowell to conduct a file review with her so that she could be brought up to speed on his claim files.

89. When Odessa asked him questions regarding specific claim files or clients, Crowell provided her with a succinct response to her question.

90. Crowell did not volunteer unnecessary information to Odessa unless he was asked for further information, as Odessa was familiar with several of his claims.

91. When Odessa asked Crowell questions about claims, Odessa cut Crowell short when he gave more information than what was asked for.

92. On March 16, 2022, Odessa placed Crowell on a Performance Improvement Plan ("PIP.")

93. During the PIP meeting, Crowell learned that Odessa was Mitchell's supervisor, despite carrying the same job title as Mitchell.

94. The PIP placed Crowell under review for six months and was scheduled to end just days before his 65th birthday.

95. Crowell was stunned by the PIP, as he had just been rewarded for his exceptional performance just two weeks earlier.

96. Crowell was unable to identify any issue that had taken place since he was reassigned to Odessa that would bring his performance under review.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

97. The primary complaint that AG used as the basis for Crowell's PIP was for "Not following instructions from your manager and being respectful of the established procedures within the reinsurance unit."

98. In the PIP, Odessa detailed the alleged violations, which were exclusively related to the LRR and query email that Crowell had worked on in February 2022.

99. Odessa fixated on Crowell's failure to include information that was not usually included in a recommendation memo for an assumed large loss and for sending the query email with her corrections prior to Odessa stating that she approved his revisions to the email.

100. AG's standard practice for query emails does not include a manager's final approval before sending the email.

101. AG's standard practice for sending emails that have been revised was to send the email if no acknowledgment or further corrections had been given to an email.

102. The PIP also raised allegations that Crowell did not show the necessary familiarity with a claim and contract to permit a claim handler or manager to have efficient conversations.

103. Odessa claimed that Crowell did not show understanding of the claim itself, the underlying facts, the operative treaty contract language, or whether the underlying claim was properly presented under the reinsurance contract.

104. Odessa's claims as the basis for the PIP were false.

105. The PIP mandated weekly meetings with Odessa.

106. Odessa also required Crowell to send her a weekly email listing completed work.

107. Crowell was also expected to demonstrate immediate improvement in LLRs.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

108. Notably, the PIP recognized that there would be some uncertainty while Crowell transitioned from assumed claims to ceded claims.

109. At no point was Crowell ever reassigned to ceded claims, nor was he advised that he would be transitioning to ceded claims.

110. After Crowell was issued the PIP, Crowell was never assigned any ceded claims.

111. Crowell told Odessa that he was concerned about the length of the PIP, noting that it would end just days before his 65th birthday.

112. Crowell asked AG to reconsider the length of the PIP.

113. AG refused.

114. Crowell sent a formal response to the PIP to Odessa and Bogin, challenging the false allegations but assuring them that he fully intended to meet any expectations.

115. Crowell told them that he felt ambushed, as Odessa had never raised any concerns about his performance.

116. Crowell told them that his job performance had been recognized and rewarded just two weeks earlier.

117. Crowell told them that Odessa had only been his manager for two weeks and did not have sufficient time or information to form an opinion as to Crowel's abilities to perform his duties.

118. Upon information and belief, AG did not micromanage substantially younger Senior Assumed Reinsurance Specialists.

119. Upon information and belief, AG did not require emails from substantially younger Senior Assumed Reinsurance Specialists to be reviewed prior to the email being sent.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

120. Upon information and belief, AG did not place substantially younger Senior Assumed Reinsurance Specialists with similar job performance on PIPs.

121. Less than two weeks later, AG terminated Crowell on March 29, 2022.

122. When Crowell was terminated, AG stated that Crowell was insubordinate for sending out the email prior to Odessa's approval.

123. AG's stated basis for termination is false.

124. AG's stated basis for termination is retaliatory and pretext for age discrimination.

125. Upon information and belief, AG did not discipline or terminate substantially younger Senior Assumed Reinsurance Specialists who had similar performance to Crowell.

126. After terminating him, AG offered Crowell a separation agreement.

127. As a condition of the agreement, Crowell would be required to waive any discrimination claims against AG.

128. In response to the separation agreement, Crowell alleged that he had been discriminated against and retaliated against on the basis of his age.

129. Crowell did not sign the separation agreement.

130. After Crowell advised AG that he was not signing the separation agreement or waiving his rights to pursue age discrimination and retaliation claims against AG, in June 2022, AG sought applicants to fill his position.

131. On or about July 1, 2022, Crowell filed a charge of discrimination against AG.

132. AG allegedly replaced Crowell with a 60-year old employee.

133. Upon information and belief, AG hired a replacement for Crowell after AG had notice of Crowell's charge of discrimination.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

134. AG hired a 60-year old employee in an effort to cover up evidence of prior discrimination.

135. There is a causal connection between Crowell's age, being placed on a PIP, and his termination.

136. As a result of AG's unlawful conduct, Crowell has suffered damages.

**COUNT ONE**

**AGE DISCRIMINATION,**
**IN VIOLATION OF CONN. GEN STAT. § 46a-60(b)(1)**

137. Plaintiff hereby incorporates Paragraphs 1-137 with the same force and impact as if fully set forth herein.

138. Defendant employs one or more employees.

139. Plaintiff was qualified for his position.

140. Plaintiff was born in 1957.

141. Plaintiff is currently 66 years old.

142. Plaintiff is a member of a protected class based upon his age.

143. Plaintiff was treated differently from similarly-situated younger employees.

144. Plaintiff was harassed, discriminated against, treated in a disparate manner, placed on a performance improvement plan, and terminated on March 29, 2022.

145. At the time of his termination, Plaintiff was 64 years old.

146. There is a causal connection between Plaintiff's age, disparate treatment, being placed on a performance improvement plan, and termination on March 29, 2022.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

147. Upon information and belief, Defendant replaced Plaintiff with a member of the same protected class after it had been notified that Plaintiff was pursuing charges of age discrimination and retaliation.

148. Defendant's conduct is unlawful and in violation of Conn. Gen Stat. § 46a-60(b)(1).

149. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

150. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**COUNT TWO**

**RETALIATION,**
**IN VIOLATION OF CONN. GEN. STAT. § 31-51q**

151. Plaintiff incorporates paragraphs 1-151, with the same force and impact as if fully set forth herein at length.

152. Defendant employes one or more employees.

153. Plaintiff exercised his free speech on matters of public concern.

154. Plaintiff reported a good-faith concern.

155. Plaintiff reported that Odessa was breaching her fiduciary duty to her previous clients by using information that she had obtained while working for a previous employer.

156. Plaintiff's speech is protected by Sections, 3, 4, and 14 of the Connecticut Constitution.

157. The exercise of his rights did not materially interfere with his job performance.

158. The exercise of his rights did not interfere with his working relationship with

THE MCMINN EMPLOYMENT LAW FIRM, LLC

Defendant.

159. Plaintiff's report of concerns regarding a breach of fiduciary duty was protected activity.

160. In retaliation for Plaintiff's good-faith complaints, Defendant subjected Plaintiff to the adverse employment actions including, but not limited to, placing Plaintiff on a performance improvement plan and Plaintiff's termination on March 29, 2022.

161. There is a causal connection between Plaintiff's exercise of free speech, Plaintiff's report of good-faith concerns and violations, and Defendant's constructive discharge of Plaintiff.

162. Defendant's actions are in violation of Conn. Gen. Stat. § 31-51q.

163. As Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

164. Plaintiff seeks compensatory and punitive damages for Defendant's actions.

## PRAYER FOR RELIEF

Wherefore the Plaintiff prays that this court award all damages allowed by law, including but not limited to:

1. Money damages;
2. Costs;
3. Punitive damages, attorney fees, and expert witness fees;
4. Pre-judgment interest;
5. Trial by jury; and

THE MCMINN EMPLOYMENT LAW FIRM, LLC

6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
JOHN CROWELL

By: /s/

Michael C. McMinn (*#423555*)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com

COUNSEL FOR PLAINTIFF

A TRUE COPY
ATTEST:

CHARLES J. LILLEY
STATE MARSHAL/INDIFFERENT PERSON
HARTFORD COUNTY

THE MCMINN EMPLOYMENT LAW FIRM, LLC

**RETURN DATE: JUNE 11, 2024**

| | | |
|---|---|---|
| JOHN D. CROWELL, | : | SUPERIOR COURT |
| Plaintiff, | : | J.D. OF STAMFORD-NORWALK AT STAMFORD |
| v. | : | |
| ALAN GRAY RISK MANAGEMENT, INC. a/k/a A.G. RISK MANAGEMENT, INC., | : | |
| Defendant. | : | APRIL 25, 2024 |

**STATEMENT OF AMOUNT IN DEMAND**

The amount in demand is not less than two thousand five hundred dollars ($2,500), exclusive of interest and costs.

THE PLAINTIFF,
JOHN D. CROWELL

By: ______________________
Michael C. McMinn (*#423555*)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com

COUNSEL FOR PLAINTIFF

TRUE COPY
ATTEST:
CHARLES J. LILLEY
STATE MARSHAL/INDIFFERENT PERSON
HARTFORD COUNTY

STATE OF CONNECTICUT}
} SS: HARTFORD, APRIL 29, 2024
COUNTY OF HARTFORD }

Then and by virtue hereof on the 29th day of April, 2024, I made due and legal service on the within named Defendant, **ALAN GRAY RISK MANAGEMENT, INC. A/K/A A.G. RISK MANAGEMENT INC,** I left a verified true and attested copy of the within original **Summons, Complaint, and Statement of Amount in Demand,** with and in the hands of Todd Szabo, duly authorized to accept for Corporation Service Company, Agent For Service for said Defendant, at 225 Asylum Street, 20th Floor, in the City of Hartford.

The within is the original**, Summons, Complaint, and Statement of Amount in Demand,** with my doings hereon endorsed.

FEES:

| | |
|---|---|
| Pages | $ 18.00 |
| Endorsements | 2.00 |
| Service | 50.00 |
| Travel | 1.34 |
| Total | $ 71.34 |

ATTEST:

CHARLES J. LILLEY
STATE MARSHAL
HARTFORD COUNTY

**AFFIDAVIT**

STATE OF CONNECTICUT}
} HARTFORD, APRIL 29, 2024
COUNTY OF HARTFORD }

**JOHN D. CROWELL**

**VS**

**ALAN GRAY RISK MANAGEMENT, INC.**

THE UNDERSIGNED, BEING DULY SWORN, DEPOSES AND SAYS:

I am a Connecticut State Marshal for the County of Hartford.

On April 26, 2024, the original Writ, Summons and Complaint in the above entitled action came with and in my hands for service according to law.

In accordance with section 52-593a, CGS, I made due and legal service on the within named Defendants mentioned herein on April 29, 2024, and within 30 days of receipt of said Writ, Summons and Complaint.

ATTEST:

CHARLES J. LILLEY
STATE MARSHAL
HARTFORD COUNTY

Subscribed and sworn to before
me on this 29th day April, 2024

Notary Public: Alfredo Olivier
My commission expires June 30, 2024